This is an unusual case. We have probably more 42, 46 cases in the Eastern District of North Carolina than anywhere because of the presence of the Medical Center at Butner. And I know I've been handling them for years. This is an unusual position, though, in that we went into the last hearing with everybody pretty much on the same page. Everybody agreed it was time for Don Snyder to go home to Maryland. The only disagreement was, are we going to make it a conditional release or an unconditional release? And two psychiatrists testified. One for the government said that the release, Dr. Herbold said that the release should be unconditional, and she explained why. The remedy that you seek here today is for him to be put on unconditional release. Unconditional release, that's right. So he's been on conditional release for nearly a year now. Tomorrow will be 11 months, and he has his own apartment, his own car, and a job. So is there not some vehicle for you to go to the District Court and say, well, you put him on conditional release, I'm going to move that he be modified or terminated from this? There is indeed. There is indeed. Does that basis exist, and would it exist based upon what you just said? He's got his own car, he's got his apartment, and does that wait at least 180 days from the previous hearing? And we're already past that. Have you done it? No, sir, we have not. Well, because the case is here now. Well, but even if it's here, that's a whole different remedy. What we're going to determine is whether he should have been put there in the first instance, whether he should be kept. I mean, there's a motion proceeding. After 180 days, you can file a motion. That's right. And what is, is that based upon how he has been in that 180 days? That's right. And you are telling me his conduct has been exemplary, there's been no infractions or anything of that nature? Not at all. Not at all. It's frankly surpassed all of our expectations. And so he looks like he is entitled to this relief under this motion. Well, I hope so. But you haven't asked for it. As soon as we get out of this court, we're going to. But I mean, I can't figure that one out. Mr. Craven, I'm just thinking of the practical. He is entitled, he's been there for 180 days. I know you want to prove a point. He shouldn't have been there in the first instance. Yeah. But he's trying to go, he's not interested in your point you're trying to prove. He's trying to get out on unconditional release. I think that's what he's doing. That's exactly what he's doing. He's not interested in the academic side of this thing. Well, he's still complaining about the 38 days that he spent there that he shouldn't have had to. I'm sure he will complain about it, but you're not going to get any remedy on that. What you're seeking is a remedy to get him on unconditional. Right. He's been there. You tell me in 180 days you're going to ask for this. Of course, you get the annual yearly report that comes, I think, from somebody does that. Yeah, now we don't have that yet. You haven't gotten that. We don't have that yet. But in 180 days, his conduct has been exemplary. It meets everything. It looks like a motion. I'm not saying it would or would not. But I don't understand if he wants to get out that bad, why in the world would he not have filed a motion by now? And I know it would have made this matter moot. I believe that in my heart. Well, if he were still in custody, we would have. But he no longer has the electronic monitor. He does have to ask the probation officer in Baltimore for permission to come to leave the state. He had talked about coming down here today, and I talked him out of it. I said, you're not going to make me more nervous. He's pretty free, is what you're saying. He is. He is. He is indeed. It's really minimal stuff you're asking for now. That's right. That's right. Why don't you go back to the district court and say . . . I'm going to. . . I mean, you could have saved our time today if you had done that, don't you think? I'm going to. I'm going to. And Judge Britt knows I'm coming. And you just might do that soon and might file something back up here before we write this opinion and say, oh, this thing is moot because he's now up. You're giving me ideas here. I am. You gave it to me. You said 180 days. You can ask for it. I told you at the outset this is an unusual case. I've been knowing you a long time. You're a very smart man. I didn't give you this idea. Well, I am concerned about the 38-day situation. You know, it really bothered me. It bothered me that on March 12th, there wasn't a soul there in the courtroom or at . . . some of us were out at Butner. It was on television before Judge Britt. But there wasn't a soul involved in the case on March 12th who thought that Don Snyder was still dangerous. And yet . . . Judge Britt is not the toughest judge in America when it comes to just being unreasonable. No, a pretty reasonable person. Absolutely. I'm just trying to figure out what's going on here. It's a very unusual case to me that you would have to go and . . . I mean, it just seems to me if you went back to Judge Britt on this thing and told him about the 180 days, that's a good shot he might say, okay. Well, I think there is. And that's exactly what we're going to do next. Separate and apart from that, you seem to be suggesting in this case that we have before us that the fact that everybody agreed that your client should have been released, that that should have happened instantaneously. And that can't be the case. Nobody believed at that moment that he was dangerous. The two psychiatrists made it clear. Neither one of them believed he was dangerous. And yet Judge Britt, for procedural reasons, I mean, I'm hypothesizing this. He didn't explain it. He entered an order saying that Don Snyder is still dangerous and that his release would pose a danger to others. Nobody believed that at that time. That's why I called it a gimmick to keep him in custody. And the government bristled when I used that word gimmick and maybe I shouldn't have used it. But that's why I called it that. What gimmick was it? I guess it was the courts, really. Judge Britt had a gimmick to keep him in court. How else was he going to . . . how else could you keep him locked up for 38 days? And, you know, I made the point in the brief that . . . Only because he thought he was dangerous. On what basis? There was absolutely zero evidence that he was dangerous. Both doctors testified that he was ready for release. And he released him. He just put conditions on him. Where did Judge Britt get the idea that he was still dangerous? Well, he released him, but he just put conditions on him. I mean, that sounds like it's kind of a . . . Well, and a lot of . . . . . . easy going way. He says, well, now I'm going to keep you here. A lot of it. But you're here on a very serious situation, and we're just not . . . you know, there's some factual stuff here that your client is . . . he's not as exemplary in his conduct throughout his lifetime. He's not supposed to show up for a little while. And so Judge Britt is a seasoned judge, and he's looking at this situation, and he says, well, Scott, I'm going to sort of cut this baby in. We're going to let you go, and we'll put a few conditions on it. 180 days, you can come back with this motion, and you can show, boom. I mean, that sounds like it's a reasonable contemplation. You waited almost 360 days. Right. Twice the period of time, and it just seems like what the forecast was, what you're saying is that we're going to let him go on conditions, bring it back in 180 days, and that might just happen. Well, I think we've accomplished . . . But you didn't give him a chance to do that. I think we've accomplished something in the 11 months, and I think we're probably better off now than we would have been on the 181st day, because we . . . You say accomplished something. Your client has now demonstrated that. He's demonstrated 11 months. Oh, so it's been good for him. I think it has been. But Judge Britt did a good thing then. Well, Judge Britt . . . you could argue that he did a good thing in making it conditionally . . . You just told me he did. You said you've accomplished something in those 11 months. I've known you a long time, too, now. It concerns me. I think some of the delay, frankly, was for the convenience of the Bureau of Prisons. But do you have any evidence? Yeah, we do. The letter from the chief . . . from the probation officer in Baltimore was dated March 16, and it was replying to the Bureau of Prisons' request that they bless and approve the conditions. And the letter, which is in the record, says that since we got your request . . . And we don't know the date of the request, but common sense tells us it had to have been before the March 12 hearing that the Bureau of Prisons sent the letter to the probation office in Baltimore. And that office, on March 16, four days after the hearing, wrote a letter to the BOP saying, we approve the release plan. We like it, and we've looked into it, and we've been to Hagerstown, and we've talked to the brother and done this and done that, and you have our approval for that release plan. It was then another three weeks, until April 5, before the BOP filed that release plan, that they, at that time, had full approval on it from everybody that they want approval from. And they're not required to get the approval of the probation office. I heard Judge Britt once tell a probation officer, you know, he said, Ms. Sunstein, don't take this the wrong way. I'm not asking you to supervise him. I'm telling you to supervise him. But nonetheless, the BOP. Pardon? Well, oh, I was for it. But the BOP, after they got the report from the probation officer of Baltimore saying that we approved the plan completely, it took them then three weeks to get it from Butner to Raleigh, which is, you know, 30 minutes, as we know. Even if we assume all of that is true, I mean, we don't have a claim for damages in front of us, so I don't know what the remedy would be. I don't either. I don't either. And I just . . . I don't want this 38-day problem to happen to somebody down the line again. So you're firing a shot across the bow at future litigants? I think it was done for the convenience of the BOP. And Judge . . . It's not a class action. You're dealing with your client. I know. And the only person that cares about this right now is the person who's on this condition of release. That's right. And I, you know, we've sort of gone back and forth on it, but I am really having a hard time why, given what you're saying, he has not sought to be released. Well . . . By the remedy that's available to him, more so than coming here. Well, it was . . . For him. Because we're not going to make decisions for everybody out there. Well, it wasn't available to him on April 20 last year when we filed the Notice of Appeal or when we filed the briefs. It is available now. But it wasn't available, I think, even at the time the briefs were filed. But yes, it's available now. And I think Judge Britt should have ordered his release unconditionally on March the 12th in keeping with . . . as Dr. Rogers testified should be the case. And I think . . . I know Dr. Rogers and Dr. . . . I also know . . . I know both doctors well. I've known them both for years and I like both of them. But I think Dr. Rogers' approach was the better reasoned of the two. And I think Judge Britt should have accepted it, and I hope this Court will. I wasn't kidding when I said it was an unusual case. I see. Thank you, Mr. Cramer. Thank you. Ms. Dano? Good morning, Your Honors. May it please the Court, my name is Jennifer Danos, and I represent the United States, the appellee in this case. The District Court's ruling or finding that Mr. Snyder continued to meet criteria for civil commitment under 18 U.S.C. 4246 should be affirmed. First . . . When a motion is filed by Mr. Craven over there, after 180 days, makes all these statements about the last 180 days he's just been exemplary, what will be your counter evidence to that to say, no, he should remain on conditional release? We'd have to figure out what the evidence is. I have not yet received . . . Is there any evidence whatsoever that would indicate anything come to you, any reports, the kind of stuff that you would normally think, he's violated again, he's done some other stuff, anything like that? To date, we have no reports saying that he's violated. However, as Mr. Craven indicated . . . What type of evidence would be the evidence that you would present that you think would be sufficient to say, keep him on conditional? What type of evidence would that be? We usually would present the probation officer's annual update, which is due in April, so next month, depending on what the probation officer reported. If Mr. Snyder is . . . Does he have to report that would convince you he needs to stay on? Perhaps if he's not continuously taking his medication as prescribed. Maybe he . . . If he's continually taking medication, you don't have that, what else you got? Well, there are a number of factors that would be considered. I'm just trying to figure this out. Sure. Give me some idea, just general. Okay. What type of evidence would say he has to stay, given what we're dealing with, he has to stay on condition. You'd go in and fight this thing tooth and nail to get him to do that. Now, I know one type, if he made other threats and stuff. That's right. You don't have any evidence of that. At this point, we do not have any evidence, but it's certainly not unheard of that he could have made some threats. He could have, but I want to know, do you have anything that's come to your office whatsoever to indicate otherwise? I realize could have, but if there isn't, and Mr. Craven knows this, you've got to be looking like I am over here right now, wondering, why did he ask what has got to be out? Well, no offense to Mr. Craven, but I would expect more evidence than what he just tells us. Again, the report from the probation officer. From your perspective, so basically you don't know anything that's out there. There's nothing that's come to your attention, but it could come, but you don't know of anything. That's correct, but we would also ask the court to appoint or appoint on our own a forensic evaluator to meet with Mr. Snyder, somebody who's actually trained in giving these types of forensic opinions. I can't say whether or not, based on my own, I can't say whether Mr. Snyder continues to pose a substantial risk of physical threat or serious damage to property. Was it March 12th when he was released? What was the evidence that he continued to pose that threat? There was substantial evidence that he continues to pose a substantial threat. From Dr. Erbol, the FMC evaluator, the experts in this case did not completely agree, and Judge Britt did not just pull out a thin air that Mr. Snyder continued to pose a threat. Dr. Erbol testified that Mr. Snyder suffers from a very severe mental illness, and despite being heavily medicated, this is not an illness that was simply going to go away. He was going to continue to have these manic cycles and repeat the behavior that he's exhibited in the past. Mr. Snyder has also been charged on at least two occasions of threatening the President of the United States. On one occasion, when he was arrested in 2001, he was placed in a police cruiser and became so agitated that he actually kicked out the window of the cruiser. On another occasion, when Mr. Snyder was actually conditionally released back in 2008, it was within a week. Mr. Snyder showed up at a bar, which he was not supposed to be at. But it seems that the recommendation of Dr. Erbol alone is sufficient to indicate there is substantial evidence for the district court judge to have made the decision that he made. Isn't that enough by itself? I mean, you could have all the other evidence from another doctor, Dr. Rogers, whom have gone totally the other way, but if Dr. Erbol suggested this, that he poses this particular risk, doesn't that alone . . . isn't that enough? It is. Judge Brett had before him . . . Do you need to say anything more beyond that? I'm just asking. I mean, I'm just trying to figure out what's going on here, because if you've got two doctors, and one is clearly a basis upon which the district court can rely upon, do you need anything more? I would say not. It was certainly within Judge Brett's authority to credit Dr. Erbol over Dr. Rogers, and that's exactly what he did. So, at the time of the hearing in March of 2012, the option of a conditional release wasn't presented before Judge Brett. There was no conditional release plan in place yet. So, his options were to find that he continued to meet criteria, or that he could be unconditionally released back into the community. And, that was certainly not Dr. Erbol's opinion, that he should be released without conditions. If there's no further questions from the bench, the government rests on its written brief, and respectfully requests that the district court decision be affirmed. Thank you very much. I do have another minute, if I may, before I get back to Durham and file that motion for the judge. Tell us about Dr. Erbol. The hearing was on March 12th. That was the day Judge Brett found him still dangerous. Four days later, March 16th, the BOP receives from the probation office in Baltimore their approval of the release plan. From March 16th to April 5th, nothing happens. That's a period of 19 days. Then, the conditional release plan is filed. Judge Brett signed it that same day. So, Judge Brett found Don Snyder dangerous on March 12th, but not dangerous on April 5th, 24 days later. What happened in those 24 days? Not a blessed thing, except the BOP got with the paperwork. It happened in 180 days. Well, I'm going to . . . I still don't understand. I gave Judge Brett a hard time about that. I've got to . . . But, you've waited 180 days, and you've done nothing. Well, but as I said, at the time I filed the notice of appeal, and even at the time this case was briefed, the 180 days hadn't passed. It's passed now. I'm going home to file that motion. Your client might like that. Mr. Craven, may I ask you a question before you go? Yes, sir. I appreciate your candor with the court, and a good exchange in terms . . . These are very difficult cases, as you know. Sure. I'm in these cases with Buckner, and I appreciate your work as your court appointed. I will later, when I can incorporate it now. We thank you for your court appointed work here. The question is . . . I have just maybe a technical question, and that is this. Given your representations to the court in terms of what his situation is now, how much of your case now is left? Is it moved now that in a sense that he is in effect unconditionally released now? No, he's not unconditionally released now. So, he still has some things that you would like to be removed? Yes, he's still unconditionally released, and will be really indefinitely. But the monitoring is gone, you mentioned. The electronic monitor is off. He still has to report to the probation officer periodically. I'm not sure how often, and he has to get permission to leave the state. So, if he's unconditionally released, he would have no active monitoring at all? He wouldn't have any more conditions on him than you or I do. Okay. So, everybody's comfortable that he can self-medicate without problem? Well, I imagine so. As Ms. Daniels indicated, we don't have the annual report yet from the probation office in Baltimore. That will be due a month from tomorrow. I mean, that probation officer, he's got my phone number. If something bad had happened, I would know about it, and all I hear is good stuff from Don Snyder and his brother. You're right. This is an unusual case of another irony, too. I know that Dr. Rogers, part of it, what she said was that she didn't think that he would probably be able to comply with conditions, but he's proven that he can. That's right. Really, he surpassed all our expectations. Yeah, I noticed that. I still talked him out of coming today, though. Well, thank you so much. Thank you, sir. Thank you so much, again. We know. Thank you so much for your help to the court. Ms. Daniels, as well, is representing the United States, and with that, we're going to come down to Greek Council. We'll first ask our esteemed deputy to give us a seat for the day. This honorable court stands adjourned until tomorrow morning at 930. Godspeed to the United States and this honorable court.
judges: Roger L. Gregory, James A. Wynn Jr., Albert Diaz